Elizabeth Hunt (5292)
Elizabeth Hunt LLC
569 Browning Avenue
Salt Lake City, Utah 84105
Telephone: (801)461-4300
E-fax: 1-801-443-1980
E-mail: Elizabeth.hunt@comcast.net

Andrew Parnes (Idaho State Bar #4410)
*Pro Hac Vice*
P.O. Box 5988
Ketchum 83340
Telephone: (208)726-1010
Fax: (208)726-1187
E-mail: Aparnes@mindspring.com

IN THE UNITED STATES DISTRICT COURT
FOR UTAH, CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>RESPONDENT,<br><br>v.<br><br>FRANCES M. FLOOD,<br><br>PETITIONER. | MEMORANDUM SUPPORTING MOTION FOR RELEASE PENDING RESOLUTION OF 2255 MOTION<br><br>CASE NO. 2:11-CV-00960<br><br>JUDGE DEE BENSON |

     Frances M. Flood, by and through counsel, hereby submits this memorandum in support of the motion to release her, pending resolution of her 2255 motion.

FACTS

A.    PROCEDURAL HISTORY

     The criminal prosecution followed and was premised on a civil suit filed by the SEC against ClearOne, a multi-million dollar corporation, ClearOne CEO and

President Frances Flood, and ClearOne CFO or comptroller and Vice President Susie Strohm (FA 440-449).[1] The SEC complaint alleged a scheme or artifice to defraud, securities fraud, false statements to accountants, false filings with the SEC, keeping false books and records, and aiding and abetting false books and records violations (FA 443, document 1). On December 4, 2003, ClearOne, and on February 19, 2004, Flood and Strohm stipulated to the entry of judgments against them without admitting fault (FA 448, documents 84-85, 87-90). Tim Morrison, ClearOne Vice President of Sales, made approximately $365,000 for acting as a whistleblower in the SEC proceedings (V9: 82-83).

On July 25, 2007, over three years after the end of the SEC case, the Government indicted Flood and Strohm, eventually charging them in the second superseding indictment with conspiracy, false statement to an accountant, securities fraud and perjury (FA 376-389). Flood was convicted as charged (FA 405, document 102). Strohm was convicted of one count of perjury and acquitted of all other counts (FA 405, document 102). The only other criminal defendant charged, Timothy Morrison, Vice President of Sales of ClearOne, testified for the Government in its case against Flood and Strohm. In his own related criminal case, he pled guilty to two misdemeanors carrying no potential for incarceration (FA 451, documents 3 and 4). He signed an agreement tolling the statute of limitations for more serious

---

[1] FA refers to Flood's Appendix to her 2255 motion, and is followed by the page number marked by the Bates stamp in the bottom right hand corner of the appendix pages. Criminal trial transcripts are referred to by volume number (i.e. V1 refers to volume 1) and page number. Other transcripts are identified by date and page number.

offenses so that the Government could prosecute him further in the event he did not cooperate fully with the Government (FA 451, document 4; V8: 71).

The Court denied Flood's post-trial motions and sentenced Flood to 48 months in prison, and granted Strohm probation (FA 411-412, documents 170, 176, 177, 181, 182). After Morrison testified, Magistrate Nuffer fined him $2,500 and followed the prosecutor's recommendation that no probation was necessary (FA 453, document 25).

On direct appeal, the Tenth Circuit affirmed the Court's denial of Flood's post-trial motion relating to the statute of limitations for two securities fraud counts. United States v. Flood, 635 F.3d 1255, 1258-60 (10th Cir. 2011). The court ordered this Court to vacate the ruling on the merits of Flood's claim of ineffective assistance of counsel, holding that the claim that trial counsel labored under an actual conflict of interest was raised prematurely on appeal, as the record necessary to proper assessment of the claim had yet to be developed. Id. at 1260-61.

This Court then signed an amended order vacating the portions of its memorandum decision addressing Flood's claims of conflicts of interest and ineffective assistance of counsel, expressly permitting her to raise such claims in a 2255 petition (FA 424, Document 244).

B.     FACTS PERTAINING TO LEGAL ISSUES RAISED IN THE PETITION

ClearOne paid highly qualified and esteemed lawyers from Snow, Christensen and Martineau to represent Flood in the SEC proceedings (FA 1-3). As part of the settlement of the SEC case, Flood and ClearOne entered into an employment

separation and indemnification agreement (FA 9-14). The terms were that Flood would continue cooperating with ClearOne in ongoing litigation, and would exchange stock, stock options and the remainder of her employment contract, together worth approximately four million dollars, for a lump sum payment of three hundred and fifty thousand dollars and ClearOne's commitment to pay reasonable attorneys' fees and costs stemming from the SEC or related proceedings (FA 9-14).

ClearOne and its board members and distributors were at risk of criminal prosecution until the statute of limitations ran. ClearOne was one of the original defendants in the SEC proceedings that alleged civil charges that ran parallel to the later criminal charges (FA 443, document 1). Its criminal liability is confirmed by Flood's sentencing hearing, wherein the prosecutor interjected that ClearOne should receive no restitution, as it was involved in the fraud, and the Court agreed (T. 6/2/2010: 87; FA 374-75).

Nonetheless, ClearOne was cast as the victim in Flood's and Strohm's criminal prosecution (FA 376-89). ClearOne made and filed various official public statements proclaiming its commitment to fully cooperate with the U.S. Attorney's office in Flood's and Strohm's prosecution, while simultaneously reiterating its commitments to pay for Flood's and Strohm's criminal defenses pursuant to their employment separation agreements (FA 22-35).

By virtue of the indemnification agreement, ClearOne had a financial interest in Flood's being convicted, to relieve it of its obligation to pay for her defense (FA 9-14). ClearOne's status as the purported victim in Flood's criminal

prosecution greatly increased ClearOne's financial interest in Flood's being convicted; upon Flood's convictions, ClearOne sought a Court order of over seventeen million dollars in criminal restitution (FA 36-37). The convictions are the basis for ClearOne's efforts to recoup over three million dollars in attorneys' fees from Flood under the terms of the indemnification agreement (FA 38-39). The demand for repayment of attorney's fees includes the fees paid to Strohm's attorneys, inasmuch as Strohm's attorneys were working for Flood's benefit under a Joint Defense Agreement, discussed *infra* (FA 38-39).

Depending on Flood's lawyers' strategic choices, their defenses may have implicated ClearOne and its officers and employees who were involved in fraud (T. 6/2/2010: 87; FA 374-375). Trial counsel tried to litigate Flood's case in such manner that ClearOne would continue to pay them (FA 4, 6). However, months prior to Flood's criminal trial, once the statute of limitations had clearly run for ClearOne and its affiliates, ClearOne slowed and then ceased payments to Flood's trial counsel (FA 147-150).

Trial counsel were involved in extensive and ongoing negotiations with ClearOne to persuade it to fund Flood's defense, as contemplated in the employment separation and indemnification agreement. For instance, counsel wrote to ClearOne on November 14, 2007, regarding ClearOne's failure to pay the defense fees and expenses completely (FA 45-48). The letter detailed how ClearOne was interfering with Flood's Sixth Amendment rights and endangering her liberty. The letter specifically discussed ClearOne's refusal to pay for an expert who was essential to aid

counsel in addressing the complex accounting principles at issue, and to rebut the Government's experts. ClearOne and counsel for Flood and Strohm continued fighting over funding in correspondence (FA 40-71) and in a civil lawsuit and appeals that overlapped the criminal trial (FA 426-439).[2]

As a result of the conflicts posed by ClearOne's dual status as their employer and as the alleged victim of Flood's crimes, trial counsel for Flood made multiple fundamental strategic decisions and took multiple actions that were antithetical to Flood's best interests. Their actions actively served the conflicting interests of their employer, ClearOne, trial counsel's firm, co-defendant Susie Strohm, and her lawyers. To save ClearOne's money, trial counsel delegated the bulk of the trial preparation of Flood's defense to counsel for the co-defendant, whose interests did not coincide entirely with Flood's. For the same reason, trial counsel also relied on Flood to prepare much of her defense, despite the fact that she had no legal training, and was facing serious and complicated federal charges. Counsel did not duplicate these efforts, but ultimately found Flood's preparation materials unhelpful. Trial counsel orchestrated the mock trial in an effort to persuade Flood to plead, as ClearOne desired. Trial counsel co-operated and shared information with both the co-defendant and ClearOne, the alleged victim, pursuant to a Joint Defense Agreement. They continued to do so even after it was clear that ClearOne was not only

---

[2] Judge Benson recently recused himself from the civil fee dispute case, which is still ongoing. Judge Waddoups, who is now presiding over it set the case for a hearing on November 17, 2011.

cooperating with the Government, but also, actively working to obtain Flood's convictions in an effort to obtain roughly twenty million dollars in restitution and reimbursement of defense costs under the indemnification agreement.  As is detailed in Flood's 2255 motion, counsel litigated the fee dispute prior to and during the criminal trial, when their performance was severely dissipated and harmed by ClearOne's ongoing interference.

In serving these interests of ClearOne, trial counsel's firm, and others, which were antithetical to Flood's interests, trial counsel ultimately were serving the interests of the prosecution.  ClearOne's dual status as the alleged victim in the prosecution and as the non-paying employer of the defense attorneys allowed it to aid the prosecution by interfering with Flood's rights to conflict-free counsel of choice,[3] and to defend against the criminal charges in a fair trial.[4]  The Court and prosecution were aware of various aspects of the conflicts, but did not intercede, warn Flood or obtain a waiver of her rights to conflict-free counsel.[5]  Rather, as is discussed in the 2255

---

[3] The violation of the Sixth Amendment right to counsel of choice constitutes a structural error that requires no showing of evidentiary prejudice.  See, e.g., United States v. Gonzalez-Lopez, 548 U.S. 140 (2006).  See also United States v. Stein, 541 F.3d 130 (2d Cir. 2008) (affirming dismissal of indictments as a result of company's withholding attorney fees for criminal defendants and depriving them of counsel of choice).  In Mickens v. Taylor, 535 U.S. 162 (2002), the Court held that "actual conflict of interest," which requires automatic reversal, is established if "'counsel [were] influenced in [their] basic strategic decisions by the interests of the employer who hired [them]'" or if a conflict of interest adversely affected that attorney's performance.  Mickens, 535 U.S. at 172, quoting Wood, 450 U.S. at 170-72.

[4] There are several related constitutional rights to defend against criminal charges.  See, e.g., Crane v. Kentucky, 476 U.S. 683, 690 (1985).

motion, the case proceeded through the criminal trial, despite the obvious, pervasive and destructive conflicts of interest at play. As a result, trial counsel's performance was adversely impacted in numerous ways detailed in the 2255 motion.

ARGUMENT

A district court has the authority to grant release on bond or personal recognizance pending the determination of a motion filed pursuant to 28 U.S.C. § 2255. See, e.g., Cherek v. United States, 767 F.2d 335, 337 (7th Cir. 1985) (recognizing the inherent power in 2254 and 2255 cases). It appears that courts require a showing of a clear case on the merits or exceptional circumstances in such cases. Cf. Pfaff v. Wells, 648 F.2d 689, 693 (10th Cir. 1981) (in context of 2254 Petition). Courts apply this standard at this procedural juncture because courts reason that if a petitioner's conviction was reviewed and affirmed on appeal, the conviction is more likely to be valid, hence release is less likely to be warranted during

---

[5] Our courts have the duty to monitor criminal prosecutions for conflicts of interest. Wood v. Georgia, 450 U.S. 261 (1981), recognizes the duty of the courts to inquire into conflicts of interests posed when third parties, particularly parties operating criminal enterprises, pay criminal defense attorneys. See also, e.g., Holloway v. Arkansas, 435 U.S. 475 (1978) and Federal Rule of Criminal Procedure 44. Our courts have a duty to discuss potential conflicts with criminal defendants so that if they proceed to trial with arguably conflicted counsel, this is done with a full understanding of the attendant risks and proper waiver of the constitutional rights at issue. See, e.g., Edens v. Hannigan, 87 F.3d 1109, 1118 (10th Cir. 1996); United States v. Gallegos, 108 F.3d 1272, 1281 (10th Cir. 1997). Given the problems posed by such conflicts, courts maintain discretion to reject waivers of conflicts, despite the defendant's right to counsel of choice. While the courts are to presume the defendants' ability to waive conflicts and maintain their counsel of choice, that presumption is rebutted by an actual conflict of interest or a serious potential for conflict. See, e.g., Wheat v. United States, 486 U.S. 153, 163 (1988).

2255 proceedings. Cherek, *supra*. Flood's primary challenges to her convictions were not reviewed or rejected on the merits by the Tenth Circuit, which recognized that the record must be fully developed in 2255 proceedings before the issues can be determined properly. See United State v. Flood, *supra*. Accordingly, the Court should be open to considering her motion for release pending litigation of the 2255 motion. Compare Cherek, *supra*. As is detailed herein, and as is demonstrated by the 2255 motion, Flood's case on the merits is strong and her case presents very exceptional circumstances.

Courts consider a number of factors in making the final determination of whether to grant a release, including: 1) whether the 2255 motion presents a substantial question regarding the illegality of the petitioner's conviction; 2) whether the petitioner poses a risk of flight and 3) whether the denial of bail will leave the petitioner without a remedy given the relationship between the petitioner's remaining sentence and the time necessary to adjudicate the claims in the motion. See, e.g., Marino v. Vasquez, 812 F.2d 499, 509 (9th Cir. 1987) (2254 case), Pfaff v. Wells, *supra*. Consideration of the appropriate factors confirms that Flood should be released pending litigation of her 2255 motion.

### I. The 2255 Motion Presents Substantial Questions

The significant legal and factual issues presented in the 2255 motion are sufficiently substantial to warrant Flood's release. Cf. United States v. Affleck, 765

F.2d 944 (10th Cir. 1985).[6] The 2255 motion seeks to address the issues arising from the conflicts created by the initial funding and then frustration and thwarting of the defense by ClearOne Corporation, the alleged victim in the criminal prosecution. The funding issues and related conflicts permeated the entirety of the criminal proceedings against Flood. The motions and affidavits of trial counsel filed in original criminal case and the fee dispute case, and attached to the 2255 motion concede and detail some of the harmful effects and adverse impacts ClearOne's interference and funding disputes had on their representation of Flood. The strong factual basis of the motion confirms the substantial nature of the issues before the Court.

This case presents a constellation of novel legal issues, because defense counsel were paid by the alleged victim of Ms. Flood's alleged criminal acts, and were operating under a joint defense agreement and sharing information with the alleged victim during the criminal prosecution in an effort to persuade the alleged victim to pay their fees, despite the known fact that the alleged victim was trying to aid the prosecution in convicting Flood to avoid paying for her defense attorneys' fees and to collect some seventeen million dollars in victim restitution in the criminal case. The fact that the alleged victim delayed and then ceased funding the defense prior to trial with the knowledge of the corporation, prosecution and Court that this would defeat Flood's constitutional rights to a fair trial with effective counsel confirms the

---

[6] In United States v. Affleck, 765 F.2d 944 (10th Cir. 1985), the court defined the phrase "substantial question" for purposes of release pending appeal, indicating that issues are substantial if they are novel, undecided by controlling precedent, or fairly doubtful (e.g.. those that are not frivolous, or involve close questions that could be ruled on either way).

10

substantial constitutional nature of the issues raised in the 2255 motion. See Affleck, *supra.*

Review of the 2255 motion confirms that Flood's motion meets the substantial issue, exceptional circumstances, or the clear case on the merits standard. See Pfaff and Affleck, *supra.*

II. Flood is Not a Flight Risk

Flood has no prior criminal record. Flood returned from abroad to face the SEC complaint when it was originally filed. She surrendered her ability to direct publicly traded companies, her most obvious means of supporting herself, in settling the SEC case. She surrendered her passport to the Court years ago.

She attended all of her court appearances in the criminal case throughout the lengthy prosecution, often returning to court in Utah from out of state. Her performance on pretrial release prior to her incarceration was flawless.

The Court recognized at the time of imposing sentence that Flood has built a life of service to others since the criminal conduct at issue, which conduct was aberrant from her law-abiding history. In its prior order denying bail on appeal in the criminal case, the Court made a finding that Ms. Flood was not a flight risk (Document # 204 in case number 2:07CR485-DB).

Flood surrendered to the prison camp designated by the Bureau of Prisons on the extended date set by the Court following her surgery. While in prison, she has

continued to live in a manner consistent with her constructive and law-abiding nature, teaching GED and other courses to her fellow inmates.

Flood is married and is very much committed to her husband, children, grandchildren and extended family, all of who reside in this country. If released at this point, she intends to reside once again with her husband in Virginia while periodically coming to Utah to resolve this case. Accordingly, there is no risk of flight during the pendency of these proceedings.

> III.  The Denial of Bail May Leave Ms. Flood without a Remedy for her Unconstitutional Convictions and Sentence.

Flood began her 48 month sentence on November 3, 2010, and has been incarcerated in federal prison for almost one year. Her projected release date is April 26, 2014, roughly two and a half years from now. Proper litigation of her 2255 motion may require most of or more than the time remaining on her sentence.

As the Tenth Circuit noted in Flood's appeal, the issues posed by this case require the development of a complete evidentiary record. The 2255 motion sets forth a strong claim for relief, supported by an affidavit from lead trial counsel and other appropriate documentation. The motion alleges facts which if proven warrant relief, thus requiring an evidentiary hearing.

Prior to the hearing, Flood will be seeking discovery pursuant to Rule 6 of the Rules Governing 2255 Cases. Discovery is necessary because ClearOne and its agents, as well as the United States Attorney Office, likely have evidence relevant to both the conflict issues and the actions taken by ClearOne to interfere with Flood's

12

constitutional rights in her criminal prosecution. There is already some evidence (i.e. trial counsel's affidavits in the civil fee dispute case) that ClearOne made efforts to influence and aid the prosecution in order to secure Flood's convictions and thereby reduce their liability for fees. However, the extent of the contacts between ClearOne and the Government and the full extent of ClearOne's interference with trial counsel and Flood's constitutional rights cannot be determined without the grant of discovery and an evidentiary hearing.

Given the time necessary to conduct such discovery, the resolution of this complex case in the district court will take a significant amount of time. There is a significant likelihood that the 2255 motion would not be fully resolved before the substantial or entire completion of Ms. Flood's sentence. Thus the major benefit of remedying her illegal convictions and sentence would be illusory for her if she were not released pending litigation of the 2255 motion.

## CONCLUSION

This Court is requested to release Flood on her personal recognizance during the pendency of these proceedings.

Respectfully submitted this 14th day of October, 2011.

*/s/ Elizabeth Hunt*
ELIZABETH HUNT
ANDREW PARNES

CERTIFICATE OF SERVICE

I hereby certify that on the 14th day of October, 2011, a true and correct copy of the foregoing was filed electronically and caused by be served by electronic notice to all parties listed below: Assistant United States Attorney Stewart Walz.

*/s/ Elizabeth Hunt*