IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| FRANCIS M. FLOOD,<br><br>Plaintiff,<br><br><br>vs.<br><br><br>UNITED STATES OF AMERICA,<br><br><br>Defendant. | MEMORANDUM DECISION & ORDER<br>DENYING § 2255 MOTION<br><br><br><br><br>Case No. 2:11-CV-960<br>Judge Dee Benson |

This matter is before the court on federal prisoner Francis M. Flood's Motion to Vacate Sentence Pursuant to 28 U.S.C. § 2255.  On February 27, 2009, Flood was convicted by a jury of making false or misleading statements to auditors, securities fraud, perjury, and conspiracy to commit securities fraud.  United States v. Flood, Case No. 2:07-CR-485 DB.  Thereafter, Flood filed post-trial motions asserting: (1) that her convictions for certain offenses were barred by the applicable statute of limitations; and (2) that she received ineffective assistance of counsel because her trial counsel labored under actual conflicts of interest.  The court denied the post-

trial motions and Flood appealed.

On April 4, 2011, the United States Court of Appeals for the Tenth Circuit affirmed the denial of Flood's post-trial motions and remanded for this court to vacate its ruling on the merits of Flood's ineffective assistance of counsel claim so that she could assert the claim in a collateral proceeding under 28 U.S.C. § 2255.

On October 14, 2011, Flood filed the § 2255 motion now before the court.  Flood asserts, as she did previously, that she received ineffective assistance of counsel during the criminal proceedings because her trial counsel labored under actual conflicts of interest.  Specifically, Flood contends that the arrangement of ClearOne Communications to pay her legal fees created conflicts of interest for her trial counsel and that these conflicts adversely affected her representation.

After thorough review of Flood's motion and the record in this case, and for the reasons set forth below, the court concludes Flood is not entitled to relief.

## **BACKGROUND**

On January 15, 2003, the Securities and Exchange Commission ("SEC") filed a civil suit against Frances Flood, Susie Strohm, and ClearOne Communications ("ClearOne") alleging that Flood and her co-defendants employed a scheme to defraud, committed securities fraud, made false statements to accountants, falsely filed with the SEC, kept false books and records, and aided and abetted false books and records violations.  (Memorandum Decision, United States v. Flood, 2:07-CR-485 DB, Doc. No. 170 at 2 (D. Utah April 7, 2010).)  Flood, the CEO of ClearOne, retained Max Wheeler and the law firm of Snow Chistensen & Martineau

(collectively "SCM") "to represent her in all matters relating to the SEC investigation and related proceedings."  (FA at 302.)[1]  The terms of the representation were contained in the engagement letter signed by Flood at the outset of the SEC suit.  (FA at 177.)  Both ClearOne and Strohm were represented by separate counsel.  (FA at 9 & 426-28.)

During the SEC proceedings, Flood, Strohm and ClearOne entered into a Joint Defense Privilege and Confidentiality Agreement ("Joint Defense Agreement"), which allowed them to share "documents, factual material, mental impressions, memoranda, interview reports, litigation strategies, and other information including the confidences of each client," without waiving the attorney-client privilege.  (FA at 15-21.)  The Joint Defense Agreement specifically provided:

> Nothing contained herein shall be deemed to create an attorney-client relationship that gives rise to a fiduciary duty between any attorney and anyone other than the client of that attorney.  The fact that an attorney has entered into this Agreement shall not in any way preclude the attorney from representing any interest that may be construed as adverse to any other party to this Agreement . . . .

(FA at 19.)

Flood settled with the SEC and agreed to entry of a permanent injunction against her as well as the imposition of a financial penalty.[2]  (FA at 448.)  At approximately the same time she was negotiating her settlement with the SEC, Flood negotiated an employment separation agreement with ClearOne.  (FA at 9-14.)  As the agreement reflects, Flood had "employed

---

[1] FA refers to Flood's Appendix, and is followed by the page number marked by the Bates stamp in the bottom right hand corner of the appendix page.

[2] Flood stipulated to the entry of judgment which enjoined Flood from violating the securities laws' anti-fraud and record keeping and reporting requirements.  It also prohibited Flood from acting as a corporate officer or director of any publicly held company and required her to disgorge $71,000 plus interest and pay a $71,000 civil penalty.

separate counsel, [SCM], to defend her in the SEC Action and the Related Proceedings," and SCM "also represented Flood in connection with the negotiation and drafting" of the separation agreement.  (FA at 9.)

Under the terms of the agreement, Flood resigned from her position as CEO of ClearOne, dissolved her employment contract (worth approximately $650,000), and surrendered her stock and stock options to ClearOne.  (FA at 301.)  In return, ClearOne paid Flood $350,000 and agreed to indemnify Flood "for any liability and all reasonable attorneys' fees and costs incurred by her in connection with the SEC Action or any Related Proceedings, which incurred before or after the effective date of this Agreement."  (FA at 11.)  Subject to Flood's continued cooperation with ClearOne and other limitations, ClearOne agreed to "continue to pay for the reasonable defense costs incurred by Flood in defending matters or future matters, if any, which may arise from or relate to her tenure as an officer or director of ClearOne."  (FA at 11-12.)  As soon as the agreement was signed, ClearOne paid SCM the legal fees that Flood had already incurred and "continued to pay all fees and costs as they became due."  (FA at 302.)

Thereafter, in addition to the SEC's civil suit, the United States Attorney for the District of Utah brought criminal charges against Flood and Strohm.   On July 25, 2007, Flood was indicted by a federal grand jury.  (FA at 395.)  In January 2008, the grand jury returned a second superseding indictment charging Flood with conspiracy to commit various securities offenses, false statements to accountants, securities fraud, and perjury.  (FA 376-98.)

Throughout the criminal case, SCM continued to represent Flood pursuant to the engagement letter Flood signed at the outset of the SEC suit, and SCM "sent its invoices to

ClearOne based upon the Employment Separation Agreement." (FA at 148 & 177.) SCM invoiced ClearOne based on its understanding that ClearOne had "agreed to pay the attorney's fees and costs associated with [their] representation of Flood." (FA at 148.)

In the beginning, ClearOne paid the invoices submitted by SCM. (FA at 148.) However, in October of 2007, ClearOne demanded additional information from SCM before paying the balance due on an invoice. (FA at 43 & 49.) SCM refused to provide this information because "the level of detail [ClearOne was] demanding would disclose work product and attorney-client information." (FA at 50.) Flood's counsel worried that the information contained in the bills would then be subject to discovery by ClearOne's shareholders and the government. (FA at 50.) After receiving SCM's response, ClearOne withdrew its request for detailed billing records. (FA at 52.)

Between November 2007 and August 2008, SCM worked to assure ClearOne that it was billing for only "reasonable attorney fees and costs," as contemplated by the indemnification agreement. (See, e.g., FA at 41 (letter to ClearOne stating that SCM "remains[s] willing to work with you to ensure that you are fully informed about the nature of the representation provided in order to justify that the legal fees are appropriate").) Among other things, SCM assured ClearOne that "[c]ost saving devices are in place." (FA at 47.) SCM explained that the law firm representing Strohm "has the resources available to review the [discovery] documents on an expedited basis to cull out what is important," and that "the efforts of Ms. Strohm's counsel, through the Joint Defense Agreement, are also for the benefit of Ms. Flood, thus saving significant costs to ClearOne by eliminating duplicative efforts." (FA at 41 & 47.) SCM also

explained that Flood "has intimate knowledge concerning many of the documents and is going through the documents and providing important commentary." (FA at 47.) As a result, SCM's fees were lower than they otherwise might be "because [Flood] is fully engaged in her own defense and has provided literally thousands of dollars worth of time and effort that we do not have to duplicate." (FA at 58-59.) Flood's attorneys also shared their "internal Summary of the financial statistics involving this case" with ClearOne – citing the Joint Defense Agreement between ClearOne, Flood and Strohm to require confidentiality – in their efforts to convince ClearOne that their fees were reasonable. (FA at 58-62.)

In order to support the reasonableness of the costs associated with Flood's defense, SCM also apprised ClearOne of the justifications for hiring certain outside vendors. In particular, SCM explained that it was "seeking to retain a jury consultant and utilize a mock trial for the purpose of identifying key issues and strategies for presentation to the jury in this matter." (FA at 41.) In a subsequent email to ClearOne, SCM also responded to ClearOne's inquiry as to why the criminal case could not be settled. (FA at 55.) SCM suggested that "a focus group is a very effective way to get parties in a lawsuit to see things the way they really are" and frequently results in settlement. (FA at 55.) SCM requested that this argument be presented to ClearOne's legal review committee "in favor of paying for the focus group." (FA at 55.) Nonetheless, ClearOne refused to pay for the focus group. (FA at 56.)

Thereafter, in a letter to ClearOne, SCM reiterated that "a focus group is considered by the defense lawyers to be an important step in the representation of [Flood and Strohm]." (FA at 56.) SCM explained that the focus group "will help identify those issues that are most important

to a lay jury and will also assist counsel and our clients to better evaluate our positions at trial."
(FA at 56.)  SCM stated that it regarded ClearOne's refusal to pay for a focus group to be an
"improper interference with [SCM's] obligation to effectively defend charges against our client"
and a "clear violation of ClearOne's legal obligation to pay reasonable defense costs in this
case."  (FA at 56.)  SCM emphasized that "ClearOne and its officers are in no position to make
decisions about the defense of this case or to veto decisions made by the defense lawyers" and
that it had approached ClearOne about the focus group "as a courtesy," not because ClearOne
had "a say in this decision."  (FA at 56.)

  As the criminal case proceeded, ClearOne continued to question the reasonableness of
the fees and costs incurred in Flood's defense.  In a letter from ClearOne's counsel dated April
25, 2008, SCM was assured that ClearOne "has not and does not intend to substitute its decisions
for those of defense counsel," but will "make proper inquiry to ensure that its reimbursements of
Ms. Flood's legal expenses are reasonable and appropriate."  (FA at 63.)  In the correspondence
regarding attorneys fees, the specifics of defense theories and strategies were not discussed.  (FA
at 40-71.)  After April 2008, ClearOne refused to make further payments indemnifying Flood for
attorney fees.  (FA at 149.)

  The exchange over the payment of fees continued until August 2008.  (FA at 40-71.)
Throughout the exchange of letters, SCM aggressively asserted Flood's right to indemnification
for legal bills and repeatedly threatened to file an action against ClearOne to enforce the
indemnification clause in the separation agreement.  (FA at 47, 51, 57.)

  On August 21, 2008, Flood, still represented by SCM, filed suit against ClearOne in

federal district court seeking to enjoin ClearOne to pay the costs of her representation in the criminal matter.  (FA at 78.)  SCM continued to represent Flood in her civil suit.  (FA at 78.)  Although the attorneys who represented Flood in the criminal case filed notices of appearance in the civil lawsuit, Rodney Parker, who was not working on the criminal case, was lead counsel in the civil case.  (FA at 145-46.)  Mr. Parker filed every pleading and argued on behalf of Flood at every hearing in the civil case.  (FA at 429-38.)  Flood's criminal attorneys were not actively involved in the civil case because of concerns that "there may be a potential for Mr. Wheeler and Mr. Van Wagoner to be witnesses at some point."  (FA at 145-46.)

Shortly after filing the civil suit against ClearOne, Flood and Strohm filed a joint motion to continue the criminal trial (which was then scheduled for October 2008) "to allow Ms. Flood and Ms. Strohm the opportunity to compel ClearOne to comply with its duty to reimburse them for legal fees and costs."  (FA at 80.)  The United States opposed the motion, arguing that there was no ground under the Speedy Trial Act to justify an open-ended continuance to allow the fee litigation to proceed.  (FA at 103.)

This court granted Flood's motion for a continuance to February 2, 2009, but indicated that if counsel for Flood and Strohm wished to withdraw, they needed to do so promptly or they would not be allowed to withdraw regardless of the outcome of the civil lawsuit.  (FA at 114-18.)  The court also offered to appoint counsel to represent Flood under the Criminal Justice Act if she qualified as indigent.  (FA at 114-18.)  Flood did not file a motion seeking appointment of counsel and SCM did not file a motion to withdraw.

On January 6, 2009, the court entered a preliminary injunction in the civil attorney fee

action.  The court ordered ClearOne to pay all invoices from SCM under an arrangement whereby 40% of the fees would be held in escrow so that the court could later consider whether the full amount of fees was reasonable.  (FA at 311-12.)

In February 2009, the United States tried its criminal case against Flood.  After a three-week trial, the jury found Flood guilty on all counts.  (FA at 405; United States v. Flood, 2:07-CR-485 DB.)  Shortly thereafter, Flood filed a motion for a new trial and to vacate the verdict, which was denied.  (FA at 406-07.)  Subsequently, Flood changed counsel and filed a second motion to vacate her conviction.  (FA at 408-09.)  In Flood's second motion to vacate, Flood argued, for the first time, that her convictions should be vacated "as a result of the actual conflict of interest of trial counsel arising from their employment by ClearOne."  (Motion to Vacate Convictions, United States v. Flood, 2:07-CR-485 DB, Doc. No. 161.)

The court denied Flood's second post-trial motion to vacate her conviction.  With regard to Flood's claim that her conviction should be vacated because trial counsel was operating under a conflict of interest, the court found that the motion was untimely filed under Fed. R. Crim. P. 33.  (Memorandum Decision, United States v. Flood, 2:07-CR-485 DB, Doc. No. 170 at 10-13 (D. Utah Apr. 7, 2010).)  The court further ruled that even if Flood's failure to timely file her motion were excusable, her "representation was not impaired by an actual conflict of interest." (Id. at 14.)

Flood filed a notice of appeal with the United States Court of Appeals for the Tenth Circuit and moved this court for release pending appeal.  (FA at 412-13.)  In denying the motion for release pending appeal, this court determined that Flood's appeal did not raise a substantial

question of law or fact likely to result in reversal.  (Order, <u>United States v. Flood</u>, 2:07-CR-485 DB, Doc. No. 204 at 5 (D. Utah July 6, 2010).)  Relevant to the present motion, the court ruled that "Flood's argument regarding a conflict of interest fails to establish the factual underpinnings of such a conflict; ClearOne did not direct the legal strategy of Flood's counsel nor did it compromise Flood's legal representation."  (<u>Id.</u>)

In her direct appeal to the Tenth Circuit, Flood argued that her convictions for certain offenses were barred by the statute of limitations, and "that she received ineffective assistance of counsel because her trial counsel labored under actual conflicts of interest." <u>United States v. Flood</u>, 635 F.3d 1255, 1256 (10th Cir. 2011).  The Tenth Circuit affirmed the district court's denial of Flood's post-trial motions relating to the statute of limitations for two securities fraud counts, but did not reach the merits of the ineffective assistance claim because, according to the Tenth Circuit, "the record has not been sufficiently developed to determine whether Flood's trial counsel labored under actual conflicts of interest." <u>Id.</u> at 1261.  Accordingly, the Tenth Circuit remanded the case for this court to vacate its ruling on the merits of Flood's ineffective assistance of counsel claim so that she could assert her claim in a § 2255 motion.  <u>Id.</u>  In accord with the Tenth Circuit's decision, this court vacated those portions of its decision denying Flood's motion to vacate that addressed Flood's claims pertaining to conflicts of interest and ineffective assistance of counsel.  (Amended Order Vacating Ruling, <u>United States v. Flood</u>, 2:07-CR-485 DB, Doc. No. 244 (D. Utah May 24, 2011).)

Thereafter, on October 14, 2011, Flood filed the present "Motion to Vacate and Set Aside Convictions and Sentence Under 28 U.S.C. § 2255."  In this motion, Flood asserts that she

received ineffective assistance of counsel because her trial counsel labored under a conflict of interest as a result of the third-party fee arrangement with ClearOne and that the conflict caused her trial counsel to make fundamental strategic decisions that were adverse to Flood.

## DISCUSSION

The "Sixth Amendment . . . entitles a defendant in a criminal case to the effective assistance of competent counsel." United States v. Gallegos, 39 F.3d 276, 277-78 (10th Cir. 1994). This includes the "right to representation that is free from conflicts of interest." Id.; see also Wood v. Georgia, 450 U.S. 261, 271 (1981). Generally, to prevail on a claim of ineffective assistance of counsel, a defendant must show that her counsel's performance was deficient and that prejudice resulted. Strickland v. Washington, 466 U.S. 668, 694 (1984). However, in the context of a conflict of interest claim, the defendant need only demonstrate: (1) an actual conflict of interest which (2) adversely affected his lawyer's performance. United States v. Alvarez, 137 F.3d 1249, 1251 (10th Cir. 1998). "If the [defendant] can establish the conflict actually affected the adequacy of his representation, prejudice is presumed." Id.; see Strickland, 446 U.S. at 692 (prejudice is presumed "if the defendant demonstrates that counsel 'actively represented conflicting interests' and that 'an actual conflict of interest adversely affected his lawyer's performance'" (quoting Cuyler v. Sullivan, 446 U.S. 335, 350 (1980)).

"An actual conflict of interest results if counsel was forced to make choices advancing other interests to the detriment of his client." Alvarez, 137 F.3d at 1252. To demonstrate an actual conflict of interest, "'the petitioner must be able to point to specific instances in the record which suggest an impairment or compromise of his interests for the benefit of a third party.'" Id.

11

(quoting <u>Danner v. United States</u>, 820 F.2d 1166, 1169 (11th Cir. 1987)).  The mere possibility of a conflict does not rise to the level of a Sixth Amendment violation and, therefore, "is insufficient to impugn a criminal conviction."  <u>Sullivan</u>, 446 U.S. at 350.  Additionally, a "defense counsel's performance [is] adversely affected by an actual conflict of interest if a specific and seemingly valid or genuine alternative strategy was available to defense counsel, but was inherently in conflict with his duties to others or his own personal interest."  <u>United States v. Bowie</u>, 892 F.2d 1494, 1500 (10th Cir. 1990).  The defendant has the burden of showing specific instances to support his contentions of an actual conflict adverse to his interests.  <u>Alvarez</u>, 137 F.3d at 1251.

Flood has not met this burden.  As an initial matter, although Flood's motion explains the various ways in which her indemnification agreement with ClearOne allegedly denied her effective assistance of conflict-free counsel, it fails to identify the legal authority on which her arguments rest.  Nonetheless, as the government sets forth in its opposition, the circumstances of this case, and the facts as set forth by Flood, suggest two possible conflict-of-interest theories.  First, a conflict of interest may arise when an attorney is actively representing the adverse interests of a third party who is paying his fee.  Second, a conflict of interest may arise where an attorney places his own financial interests above those of his client.  (Govt's Mem. In Opp'n at 13-14.)  In sum, the question in this case is whether Flood's trial counsel was actively representing either ClearOne's interests or his own financial interests to Flood's detriment.   As explained below, Flood has failed to show, under either theory, that a conflict of interest existed that adversely affected her counsel's performance.

1. **The Indemnification Agreement Did Not Create an Actual Conflict of Interest Because Trial Counsel Owed No Duty of Loyalty to ClearOne and Trial Counsel Did Not Actively Represent ClearOne's Conflicting Interests.**

Flood alleges a conflict of interest based on the Indemnification Agreement and the fact that ClearOne, the alleged victim in the criminal case, was the party responsible for paying Flood's attorney's fees to SCM.   Flood asserts that "[a]s a result of the conflicts posed by ClearOne's dual status as [trial counsel's] employer and as the alleged victim of Flood's crimes, trial counsel for Flood made multiple fundamental strategic decisions and took multiple actions that were antithetical to Flood's best interests."  (2255 Motion at 14-15.)

However, the "payment of legal fees by a third party does not automatically rise to the level of a conflict of interest."  United States v. Tobon-Hernandez, 845 F.2d 277, 281 (11th Cir. 1988).  Even when the interests of the third-party payer conflict with the interests of the defendant, an actual conflict of interest exists only when the attorney is representing the interests of the third party rather than those of his client.  See, e.g., id. (rejecting petitioner's ineffectiveness claim on the basis that his "counsel was paid by a third party whose interests conflicted with his own" where petitioner had not produced "any evidence that his lawyer represented anyone's interests other than his own").  In this case, there is nothing in the record to suggest that Flood's attorneys were hired by or were actively representing the interests of ClearOne.  Flood's trial counsel, SCM, was hired by Flood and represented only Flood. ClearOne had separate counsel.  Accordingly, SCM had no conflicting ethical duties or conflicting responsibilities in representing Flood.

Moreover, ClearOne had no ability to direct the legal strategy of Flood's defense nor did

ClearOne stand to benefit from a particular legal or factual argument.  There is no evidence that ClearOne sought to influence SCM's legal strategy, much less that SCM would have heeded such requests.  SCM did not take directions from ClearOne and the evidence indicates that Flood's attorneys vigorously resisted any attempts by ClearOne to intrude upon Flood's defense. SCM repeatedly told ClearOne that its contractual obligations to indemnify Flood gave ClearOne no say in how her defense was conducted.  The record reflects that ClearOne's interference with Flood's defense was limited to efforts to minimize costs and the record reflects that SCM aggressively resisted even that encroachment.  For example, when Clear One refused to pay for a service that SCM believed was necessary, as with the mock trial, SCM stood by its judgment and did not defer to ClearOne.

Moreover, even accepting Flood's assertion that ClearOne had a financial interest in Flood being found guilty, ClearOne's financial responsibility for Flood's defense still did not create a conflict of interest.  ClearOne's interests, even if antithetical to Flood's, are not relevant unless they were shared by Flood's trial counsel.  In order to establish a conflict of interest, "the interests of counsel and the defendant must be divergent in the current litigation such that the attorney has an interest in the outcome of the particular case at issue that is adverse to the defendant."  Hale v. Gibson, 227 F.3d 1298, 1313 (10th Cir. 2000).  In this case, if anything, Flood's attorneys shared her interest in an acquittal because an acquittal was most likely to ensure SCM's timely receipt and payment of its fees.

The court agrees with the government when it states: "[T]he primary flaw in Flood's argument is that she attributes ClearOne's adverse interests to SCM.  While ClearOne may well

have had reasons for wanting Flood convicted, SCM was not employed by ClearOne, nor was it

representing ClearOne's interests."  (Govt's Mem. In Opp'n at 20.)  To the contrary, SCM was

hired by Flood and represented only Flood throughout the SEC and criminal proceedings.

There is nothing in the record to support or even suggest that SCM took positions antithetical to

Flood's interest at the behest of ClearOne.  "Without a showing of inconsistent interests, any

alleged conflict remains hypothetical, and does not constitute ineffective assistance."  Alvarez,

137 F.3d at 1252.

       2.       **ClearOne's Refusal to Pay Flood's Legal Fees Did Not Create a Conflict of Interest Because Trial Counsel's Own Financial Interests Remained Subordinate to Flood's Interests.**

Next, Flood argues trial counsel had a financial conflict of interest because SCM put its

financial interests ahead of Flood's interest in a fair trial.  Specifically, Flood asserts that trial

counsel's decision to litigate the fee dispute prior to and during trial was a choice that served

trial counsel's firm's financial interests "and was antithetical to Flood's interest in being

defended effectively at trial."  (2255 Motion at 20-21.)

The existence of a fee dispute – even one between attorney and client – does "not without

more constitute an actual conflict."  United States v. O'Neil, 118 F.3d 65, 71 (2d Cir. 1997).

The government is correct in its assertion that a defendant "must establish that an actual financial

conflict existed by showing that his counsel actively represented his own financial interest

during [defendant's] trial, rather than showing the possibility of an actual financial conflict."

United States v. Caderno, 256 F.3d 1213, 1218 (11th Cir. 2001).  To do so, the defendant "must

point to specific examples showing that [her attorney] put his own financial interests ahead of

[the defendant's] interests." <u>United States v. Ohiri</u>, 2008 WL 2698649 at *6 (10th Cir. July 11, 2008).

      In this case, Flood cannot establish that SCM pursued its own financial interests to the detriment of her defense in the criminal case.  First, Flood has produced no evidence to show that SCM, rather than Flood herself, controlled the timing of her civil lawsuit against ClearOne. The civil suit was brought by Flood to enforce the Indemnification Agreement – between Flood and ClearOne – in which ClearOne promised to continue to pay Flood's reasonable attorneys fees and costs associated with her defense.  Although attorneys from SCM represented Flood in the civil action, SCM was not a party to the lawsuit, as SCM had no contractual relationship with ClearOne.  Contrary to Flood's assertion that SCM was employed by and had a contract with ClearOne to provide Flood's criminal defense, the evidence shows that SCM was actually employed by Flood, pursuant to a retainer agreement signed in 2003.  As such, ClearOne owed no duty to SCM to pay for its legal services.  Rather, ClearOne's obligation was to indemnify Flood to the extent required in the separation agreement.  See <u>Flood v. ClearOne Comm'n</u>, 2:08-CV-631 DB, Doc. No. 110 at 13 ("The obligation to pay [SCM] was Flood's.  ClearOne's duty was to indemnify and advance funds on behalf of Flood.").  Accordingly, it was Flood who sued ClearOne to enforce her own contractual rights, and Flood has presented no evidence to suggest that SCM unilaterally decided to bring a civil lawsuit in Flood's name against Flood's wishes.

      Moreover, it is not clear how pursuing both the civil suit and the criminal suit simultaneously created a conflict or served anyone's interest other than Flood's.  It was in Flood's interest to obtain all of the funds possible to aid in financing her defense by enforcing

the terms of her separation agreement. This case is unlike those in which trial counsel files a

civil action against his own client to collect attorneys fees before or during a criminal trial. See,

e.g., United States v. O'Neil, 118 F.3d 65 (2d Cir. 1971). Yet even those extreme circumstances

do not necessarily compel the conclusion that the attorney was operating under an actual conflict

of interest. See id. at 71 (holding that neither the fee dispute or civil actions initiated to recover

fees three days prior to trial gave rise to an actual conflict of interest). Rather, "courts generally

presume that counsel will subordinate his or her pecuniary interests and honor his or her

professional responsibility to the client." United States v. Taylor, 139 F.3d 924, 932 (D.C. Cir.

1998). That is precisely what occurred in this case. Despite the fee dispute, trial counsel

subordinated his pecuniary interests and continued to vigorously defend Flood.

     Finally, Flood asserts that as a result of "conflicting interests" SCM was delayed or

prevented from hiring experts, paying witness fees and travel expenses, and fully investigating

the case. (2255 Motion at 39.) The Tenth Circuit rejected a similar argument in United States v.

Ohiri, 2008 WL 2698649 at *6 (10th Cir. July 11, 2008). In that case, the defendant argued that

the debt he owed to his trial counsel created an actual conflict of interest, and this conflict led to

his attorney's failure to fully investigate and defend the case. In support of his claim, the

defendant submitted an affidavit from his attorney stating, among other things, that "he did not

retain experts to aid in trial preparation and did not have waste samples tested by independent

laboratories because Ohiri could not afford the cost." Id. at *6. The Tenth Circuit held that the

defendant had failed to establish an actual conflict of interest. There was no evidence that the

defendant's "existing debt caused his attorney to forego retaining experts or testing waste

samples."  Id.  Instead, the attorney's affidavit said "those options were not pursued because

Ohiri could not afford them." Id.

    Similarly, in this case, while Flood's trial counsel indicated that if "ClearOne had

honored its agreement to properly fund the defense," SCM would have been able to hire

investigators, pay for the continued services of an expert consultant, transport additional defense

witnesses to trial and present expert testimony, (FA at 6-7), there is no suggestion that these

options were not pursued due to a conflict of interest between SCM and Flood.  Instead, as in

Ohiri, these options were not pursued because of their expense.  As this court has previously

stated: "It is true that cost-saving measures were put in place and that Ms. Flood's attorneys were

at times involved in efforts to collect their fees from ClearOne.  Such circumstances are not

unique to Ms. Flood's trial counsel but instead a fact-of-life in the legal practice."

(Memorandum Decision, United States v. Flood, 2:07-CR-485 DB, Doc. No. 170 at 14 (D. Utah

Apr. 7, 2010).)

    An actual conflict of interest occurs "when, during the course of the representation, the

attorney's and the defendant's interest 'diverge with respect to a material factual or legal issue or

course of action.'"  Winkler v. Keane, 7 F.3d 304, 307 (2d Cir. 1993) (quoting Cuyler, 446 U.S.

at 356 n.3).  Throughout this case, Flood and SCM's interests did not diverge – they both wanted

the best defense that ClearOne's money could buy.  Based on the record in this case, Flood's

interest in effective representation was advanced by her choice to pursue civil litigation against

ClearOne to enforce the indemnification agreement, and SCM's willingness to represent her in

that lawsuit did not create an actual conflict of interest between SCM and Flood, but rather

served Flood's interests.

## CONCLUSION

The court, having been involved with this case from the outset, having observed the performance of counsel during the duration of the criminal trial and the civil attorney fee action, and having reviewed once again the record of those proceedings, concludes that Flood has failed to show that the third-party fee arrangement with ClearOne created an actual conflict that affected her counsel's performance. Accordingly, and or the foregoing reasons, IT IS HEREBY ORDERED that Petitioner's Motion to Vacate, Set Aside or Correct Sentence Pursuant to 28 U.S.C. § 2255 is DENIED.[3]

DATED this 5th day of June, 2012.

_____
Dee Benson
United States District Judge

---

[3] Because the court can decide this motion on the record before it, the court DENIES Ms. Flood's request for an evidentiary hearing. See Rule 8, Rules Governing Section 2255 Proceedings. The court also concludes Ms. Flood has failed to demonstrate "good cause" as required by Rule 6 of the Rules Governing Section 2255 Proceedings, and therefore DENIES Ms. Flood's Motion for Discovery. (Dkt. No. 21.) Similarly, the court DENIES Ms. Flood's Motion in Limine for Judicial Notice. (Dkt. No. 28.)